IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SALANNA BUSH TRAVIS** | * | |
| | * | |
| v. | * | Civil Case No. PWG-16-1867 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Salanna Bush Travis, who is appearing *pro se,* did not file a motion for summary judgment and did not respond to the Commissioner's Motion for Summary Judgment.[1]  I have considered the Commissioner's pending Motion for Summary Judgment.  [ECF No. 17].  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed.  42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016).  For the reasons set forth below, I recommend that the Commissioner's motion be denied, the decision of the Commissioner be reversed in part, and the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Travis protectively filed her applications for disability insurance benefits and disabled widow's benefits, alleging a disability onset date of July 31, 2011.  (Tr. 161-69).  Her applications were denied initially and on reconsideration.  (Tr. 80-93, 96-111).  A hearing was held on September 29, 2014.  (Tr. 42-77).  After the hearing, the Administrative Law Judge

---

[1] On February 24, 2017, this Court sent Ms. Travis a Rule 12/56 letter, informing her that she had seventeen (17) days to respond to the Commissioner's Motion for Summary Judgment.  [ECF No. 18].

("ALJ") issued an opinion denying benefits. (Tr. 21-41). The Appeals Council ("AC") denied review, making the ALJ's decision the final, reviewable decision of the Agency. (Tr. 1-7).

The ALJ found that, during the relevant time frame, Ms. Travis suffered from the severe impairments of "degenerative joint disease in the left knee, degenerative disc disease of the cervical spine, Lyme disease, depressive disorder, and anxiety disorder." (Tr. 28). Despite these impairments, the ALJ determined that Ms. Travis retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), with the following limitations: only occasional lifting and/or carrying of a maximum of 20 pounds; lifting and carrying 10 pounds or less on a frequent basis; standing/walking six hours in an eight-hour workday; sitting six hours in an eight-hour workday; frequent climbing of ramps/stairs; only occasional climbing of ladders and scaffolds; frequent balancing, kneeling, stooping, crouching, and crawling. The claimant's pushing, pulling, and operation of hand and foot controls is limited to 10 pounds of force on a frequent basis and 20 pounds of force on an occasional basis. The claimant retains the ability to understand, remember and carry out instructions concerning simple, routine tasks on a constant basis. The claimant retains the ability to understand, remember, and carry out instructions concerning complex tasks on a frequent basis. Finally, the claimant is able to constantly make simple decisions, frequently make complex decisions, and frequently interact with supervisors, coworkers, and the public.

(Tr. 29-30). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Travis could perform. (Tr. 35-36). Therefore, the ALJ concluded that Ms. Travis was not disabled. (Tr. 36).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary

record whether substantial evidence supports the ALJ's findings).  For the reasons described below, while substantial evidence supports some portions of the ALJ's decision, the analysis is deficient under the recent Fourth Circuit opinions in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) and *Fox v. Colvin*, 632 Fed. App'x 750, 2015 WL 9204287 (4th Cir. Dec. 17, 2015). Accordingly, I recommend remand.

At step one, the ALJ found in Ms. Travis's favor that she had not engaged in substantial gainful activity since her alleged onset date, and that she met the non-disability requirements for disabled widow's benefits.  (Tr. 28).  At step two, the ALJ found the severe impairments listed above. *Id.*  The ALJ found no non-severe impairments. *Id.*

At step three, the ALJ specifically considered physical Listings 1.02 and 1.04, but concluded that Ms. Travis did not allege or establish that either Listing had been met or equaled. *Id.*  The ALJ also applied the special technique for evaluation of mental impairments to consider Listings 12.04 and 12.06.  (Tr. 28-29).  The ALJ concluded, among other findings, that Ms. Travis had moderate difficulties in concentration, persistence, or pace.  (Tr. 29).

In considering the appropriate RFC assessment, the ALJ analyzed the medical evidence derived from treatment notes and consultative examinations, including the results of objective testing.  (Tr. 30-33). The ALJ summarized the types of treatment Ms. Travis has received, including relatively mild objective findings, and specifically noted that her orthopedic surgeon had stated that she would "need to return [to work] in some capacity." (Tr. 32).  The ALJ further noted improvement with iontophoresis and physical therapy. *Id.*  With respect to mental health issues, the ALJ noted that the opinion from a licensed clinical social worker did not constitute an acceptable medical source, was not based on a lengthy treatment relationship, and was

3

uncorroborated by other record evidence. (Tr. 34). The ALJ concluded, following the analysis, that Ms. Travis's assertions were not entirely credible. *Id.*

Continuing at step four, the ALJ found that Ms. Travis was unable to perform her past relevant work as a bus attendant, call center worker, and real estate worker. (Tr. 35). At step five, the ALJ posed hypotheticals to the VE to determine whether a person with each set of hypothetical criteria would be able to find work. (Tr. 66-73). Ultimately, the ALJ determined that Ms. Travis's RFC matched one of the hypotheticals he had posed. (Tr. 69-71). The VE cited several jobs in response to that hypothetical, and the ALJ relied on that VE testimony in his opinion. (Tr. 71, 35-36).

The function of this Court is not to review Ms. Travis's claims *de novo* or to reweigh the evidence of record. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also* 42 U.S.C. § 405(g). I am unable to recommend that finding here.

While this case was pending, the Fourth Circuit issued its opinion in *Mascio*, a Social Security appeal in the Eastern District of North Carolina. In *Mascio*, the Fourth Circuit determined that remand was warranted for several reasons, including a discrepancy between the ALJ's finding at step three concerning the claimant's limitation in concentration, persistence, and pace, and his RFC assessment. 780 F.3d at 638.

At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404,

Subpt. P, App. 1 § 12.00. Most listings therein consist of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* at § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.*; *see* 20 C.F.R. § 404.1520a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas, along with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function." *Id.* at § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* at § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer

5

little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The RFC assessment is distinct, but not wholly independent, from the ALJ's application of the special technique at step three. In *Mascio*, the Fourth Circuit voiced its agreement with other circuits "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (joining the Third, Seventh, Eighth, and Eleventh Circuits) (citation and internal quotation marks omitted). The Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In so holding, however, the Fourth Circuit noted the possibility that an ALJ could offer an explanation regarding why a claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC assessment, such that the apparent discrepancy would not constitute reversible error.

In this case, at step three, the ALJ's analysis consisted, in its entirety, of the following:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. In this case, the undersigned considered the claimant's tendency to constantly reflected [*sic*] on her physical impairments to the detriment of her sustained connection.

(Tr. 29). The ALJ does not explain the phrase "sustained connection." With respect to relevant limitations in the RFC assessment, the ALJ determined that, "The claimant retains the ability to understand, remember and carry out instructions concerning simple, routine tasks on a constant basis." (Tr. 30). In the RFC analysis, the ALJ says little about concentration, persistence, or pace, but simply assigns "little weight" to the opinion of Ms. Travis's treating social worker, who believed her to have "concentration deficiencies." (Tr. 33, 34).

6

In light of the ALJ's finding of moderate limitations in concentration, persistence, or pace, under *Mascio,* more analysis is required to justify the lack of an RFC limitation addressing concentration and persistence. Remand is therefore appropriate. In recommending remand, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Travis is not entitled to benefits is correct or incorrect.

In addition, in *Fox*, the Fourth Circuit clarified the evidentiary requirements needed to support an ALJ's finding at step three of the sequential evaluation. Step three requires the ALJ to determine whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings describe each of the major body system impairments that the Agency "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

In *Fox*, regarding his findings at step three of the sequential evaluation, the ALJ stated:

> Although the claimant has 'severe' impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations. (20 CFR, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are equivalent to those of any listed impairment of the Listing of Impairments. In reaching this conclusion, the undersigned has considered, in particular, sections 9.00(B)(5) and 11.14.

2015 WL 9204287 at *4. The Fourth Circuit held that the ALJ's analysis was deficient because it consisted of conclusory statements and did not include "any 'specific application of the pertinent legal requirements to the record evidence.'" *Id.* (quoting *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013)). That is, the ALJ did not apply any findings or medical evidence to the identified disability listings and "offered nothing to reveal why he was making his decision."

*Radford*, 734 F.3d at 295 (emphasis in original). The Fourth Circuit also rejected the notion that failure to engage in meaningful analysis at step three could constitute harmless error where the evidence of record otherwise demonstrated that the claimant did not meet a listing. 2015 WL 9204287, at *4. Rather, the *Fox* Court emphasized that it is not this Court's role to "engage[ ] in an analysis that the ALJ should have done in the first instance," or "to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Id.* at *4-*5. The Court noted that it could not conduct a meaningful review "when there is nothing on which to base a review." *Id.* at *4.

The ALJ's opinion in Ms. Travis's case is strikingly similar to that in *Fox*. The opinion reads:

> After considering the medical evidence of record, the undersigned found that no treating or examining physician has mentioned findings – either singularly or in combination – equivalent in severity to the criteria to any listed impairment, including Listings 1.02, 1.04. Additionally, the claimant has not alleged that she has an impairment that meets or equals any listing.

(Tr. 28). Despite the fact that Ms. Travis's representative was not arguing that any particular listing was met or equaled, the ALJ believed that ample evidence warranted identification of two separate listings. However, the ALJ then provided no discussion of the criteria of those listings. The opinion thus fails to meet *Fox*'s requirement of a "specific application of the pertinent legal requirements to the record evidence," and I recommend remand for the ALJ to provide an adequate explanation.[2]

---

[2] The Commissioner has previously argued that *Fox* is not binding precedent because it is not a published decision. *Fox* is nevertheless indicative of how the Fourth Circuit would likely view an analogous case, as it did in its recent decision in *Brown v. Colvin*, 639 Fed. App'x 921, 2016 WL 502918 (4th Cir. Feb. 9, 2016). In *Brown*, the Court was presented with a similar step three analysis and echoed its reasoning from *Fox*. Specifically, the *Brown* Court stated "[W]e do not accept Brown's and the Commissioner's invitations to review the medical record *de novo* to discover facts to support or refute the ALJ's finding at Step Three, and it was error for the district court to do so." 2016 WL 502918, at *2.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court DENY Defendant's Motion for Summary Judgment, [ECF No. 17]; REVERSE IN PART the decision of the Commissioner; REMAND the case to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this Report and Recommendations; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: March 28, 2017                                              /s/
                                                                            Stephanie A. Gallagher
                                                                            United States Magistrate Judge